HEARD NOVEMBER TERM, 1873.

## WATSON *vs.* CITIZENS' SAVINGS BANK.

Where in an action by a creditor against a banking corporation to wind up its affairs, on the ground of insolvency, a temporary order is made restraining the defendant, its officers and agents, from paying out the funds, or otherwise disposing of the property and effects of the corporation, it is a constructive contempt by the attorneys of defendant to advise its officers and stockholders to file a petition in bankruptcy with the view of removing its property beyond the jurisdiction of the Court, but not a contempt of such a nature as to warrant the suspension or removal of the attorneys.

Notwithstanding the Bankrupt Act, the State Court has a general equitable jurisdiction, until proceedings in bankruptcy have been instituted. to wind up the affairs of an insolvent banking corporation incorporated by the State.

A temporary order for injunction may be made without notice to defendant.

A temporary order for injunction is not void because an undertaking is not required of the plaintiff.

The general jurisdiction of the Circuit Court to punish attorneys for contempts is not affected by Sections 6, 7 and 8, Ch. 107 of Gen. Statutes.

An attorney need not be first indicted and convicted before he can be punished under Section 7, Ch. 107 of Gen. Statutes.

An order to suspend or remove an attorney for contempt should not be made where the offence is not of so gross and serious a nature as to render him unworthy of his office.

An order imposing an impossible condition is in effect absolute.

For an attorney of defendant to receive payment of his fees after an order, wherein attorneys are not named, restraining the defendant from paying out its funds, if a contempt at all, is not such a contempt as warrants the suspension or removal of the attorney.

A mere disclaimer of all intention of contempt does not purge the contempt or relieve the party from the consequences of the act committed by him.

BEFORE CARPENTER, J., AT COLUMBIA, DECEMBER, 1873.

The facts of the case are so fully stated in the opinion of His Honor the Circuit Judge as to render any further statement here unnecessary. The opinion is as follows :

CARPENTER, J. The present proceeding arises upon rules issued by this Court, December 13, 1873, against J. D. Pope, A. C. Haskell, F. W. McMaster, L. E. LeConte, W. K. Bachman and L. F. Youmans, Esquires, as attorneys, solicitors and counsellors of this Court, requiring them severally to show cause—

First. Why they and each of them should not be adjudged in contempt of the orders and authority of this Court ; and,

Second. Why they and each of them should not be removed from their said offices as attorneys, solicitors and counsellors of the Circuit and Probate Courts of this State, and their names be stricken from the roll of attorneys.

The rules were made returnable December 19, 1873 ; but by a

subsequent order the time for making the returns was extended to the 20th day of the same month, and the hearing thereon was fixed for the 23d day of the same month.

The returns of the several respondents were duly filed.

The return of J. D. Pope, Esq., avers that the respondent acted in good faith and conscientiously in whatever · advice he gave to the Citizens' Savings Bank ; denies that he advised his clients to disregard the orders or authority of this Court; denies that he intended, in anything done by him, any disrespect or contempt to the authority of this Court or its presiding Judge. The return further sets forth, in the ways of "pleas in bar," that the assets of the Citizens' Savings Bank passed into the custody of the Register of the Bankrupt Court, by operation of the bankrupt law of the United States, which Court has a jurisdiction paramount to and exclusive of the jurisdiction of the State Courts; that the orders of the Bankrupt Court, made in respect of such assets, are binding on this Court; that it is the right of any citizen of the United States to file his petition in bankruptcy, notwithstanding the existence of any orders of the State Court ; that it was, under the bankrupt Act, the duty of the Citizens' Savings Bank to go into bankruptcy at the time in question ; that the respondent is a duly qualified attorney, solicitor and proctor in the United States Court ; that the United States Circuit Court has adjudged that the order of the Bankrupt Court, adjudicating the said Citizens' Savings Bank a bankrupt, was properly granted, notwithstanding the Act of Congress, approved February 13, 1873, entitled " An Act to amend the bankrupt law ;" that all advice given by him in the said . bankruptcy proceedings was given by him as an attorney of that Court.

The return next sets forth, " as matters of demurrer," that the rule states no statutory offense which is sufficient cause for the removal of an attorney, solicitor and counsellor ; that, unless guilty of some offense which is by statute sufficient cause for removal, an attorney is entitled to hold his office for life ; that the Constitution of the United States forbids any State to enforce any law which shall abridge the privileges or immunities of any citizen of the United States, or deny to any person the equal protection of the law ; that the laws made by authority of the Constitution of the United States forbid any Judge from, in any manner, hindering the operation of any laws passed in pursuance of the Constitution of the United States ; that no State Court can in any manner impair

the jurisdiction of any Court established by authority of laws passed in pursuance of the Constitution of the United States; that this Court had no jurisdiction of the action instituted by the above named plaintiff, and could make no valid order therein; that this Court made no valid order in the above entitled cause; that no attorney can be held to answer in this Court for any advice given to any suitor in this Court; that no attorney can be held to answer in this Court for any advice given to a suitor in the United States Court; that this Court has no right to enjoin any person or corporation from the payment of fees to attorneys; and that this Court cannot punish an attorney for accepting fees from suitors in this Court.

By a supplemental return, made by the requirement of this Court, upon hearing the return now stated, the respondent states that he did demand and receive a retaining fee of five hundred dollars for his firm, which sum was paid by the Citizens' Savings Bank, on the 29th of November, 1873.

The returns of F. W. McMaster and Louis E. LeConte, Esquires, are identical with the return already stated.

The return of each of the other respondents denies that any contempt of the authority of this Court was intended.

The return of W. K. Bachman, Esq., avers that the respondent had distinctly in view that the order of adjudication of bankrutcy would place the assets of the Citizens' Savings Bank in the exclusive jurisdiction of the United States Court, and beyond the jurisdiction of this Court; and, further, that all the respondents concurred in advising the Citizens' Savings Bank to go into the Bankrupt Court, and to petition to be adjudged a bankrupt.

The return of A. C. Haskell, Esq., avers that an attorney cannot be held responsible to the Court for any advice given to his client, but that his sole responsibility in such case is to his client, and that his client is alone responsible to the Court for the acts done in pursuance of the advice of an attorney.

The foregoing statement embraces all the causes shown by the respondents which it is necessary to consider in deciding the present case.

It will be proper to state briefly at this point the state of facts out of which the present proceeding has arisen.

On the 22d day of November, 1873, John L. Watson exhibited before me his sworn complaint, in his own behalf and that of all

other creditors of the Citizens' Savings Bank of South Carolina, in which he alleged, among other things, that he was a creditor of said Bank, and had been refused payment of his demand; that the said bank had suspended payment generally, had ceased to do business as a bank, and was insolvent; that he was informed and believed that the officers of the said bank were wasting and misappropriating the funds and effects of the bank. The complaint demanded: (1) An account by the officers of the bank of the funds thereof; (2) an injunction restraining the bank from exercising its corporate powers, and from paying out, transferring, or delivering to any person any of its moneys, property or effects; (3) that a receiver be appointed; (4) that the creditors be called in to establish their claims; (5) that the plaintiff might have such other relief as might be equitable.

Upon hearing the complaint a rule was made on the defendant, returnable on the 3d day of December, 1873, to show cause why an injunction should not be granted, restraining its officers and agents from paying out, transferring, or delivering to any person, its money, property, or effects, and, also, why a Receiver should not be appointed, and why the plaintiff should not have such other relief as might be just. It was further ordered that, in the meantime, the defendant, its agents and officers, be restrained from paying out the funds, or otherwise disposing of the property and effects of the defendant corporation; and it was ordered that a copy of the complaint and of the order be served on the officers of the defendant corporation.

On the 4th day of December, 1873, the hearing upon the return to the above stated rule took place at my Chambers. The defendant presented two principal causes in his return to the rule; the first cause denying the jurisdiction of this Court over the subject-matter of the complaint, and denying that this Court had, by its restraining order of November 22d, 1873, obtained any custody or control of the property and assets of the respondents; and the second cause showing that the respondent was adjudged a bankrupt on its own petition in the District Court of the United States for the Eastern District of South Carolina, on the 1st day of December, 1873, and that that Court had, by its Register, taken possession of the assets of the respondent.

Upon this return full arguments were heard, and on the 9th of December, 1873, the decision of this Court was rendered. The conclusions of the Court were thus stated in that decision:

1st. That this Court had jurisdiction of the cause.

2d. That the assets of the bank were legally and rightfully in its possession.

3d. That its jurisdiction was not ousted by the proceedings in bankruptcy.

4th. That its order made in the premises on the 22d of November, 1873, had been violated.

5th. That the next step taken in the administration of the assets of said bank is, necessarily, the return of said assets to the custody of this Court.

Further proceedings in the cause were then continued until the 12th day of December, 1873. The next step was the issuing of the rule against the attorneys of the Citizens' Savings Bank, as already stated, and at the same time a rule against the stockholders of the bank, to show cause why they should not be attached for contempt of the orders of this Court in removing the assets of the said bank from the custody of this Court, and in paying out its funds to its attorneys, in disregard of the order of this Court.

It is under such circumstances, and in view of the conclusion of law as above stated, that this Court is now called upon to consider these grave questions—

First. Have these respondents been guilty of contempt of this Court in the premises?

Second. If guilty of contempt in the first instance, have they purged themselves of such contempt, or shown good cause why no punishment should be inflicted on them therefor?

This Court is fully impressed with the serious nature of the questions thus forced upon it for decision; but it finds itself confronted by issues which must be met, and it has no alternative.

The contempt alleged to have been committed by these respondents consists—

First. In advising the stockholders of the Citizens' Savings Bank to file their petition for adjudication as a bankrupt, in the United States District Court, solely with a view of removing the funds of said bank from the custody and control of this Court; and,

Second. In accepting and receiving from said stockholders, through the officers of the bank, large sums of money belonging to the assets of the bank, in violation of the restraining order of this Court, made on the 22d day of November, 1873.

That the acts which are thus alleged to constitute the contempt were committed by the respondents, and committed with a full knowledge of the terms and scope of the restraining order of this Court, made on the 22d day of November, 1873, is not denied; and the question to be decided first is, whether these acts are a contempt of the orders and authority of this Court.

Contempts of Court are of two classes:

The first class consists of acts done which are openly insulting or contemptuous in their nature towards the personal authority, dignity, and station of the Court, or the Judge or Judges composing the Court.

The second class consists of acts done in violation of the orders and authority of the Court, and may or may not be attended by any open manifestations of an intent to insult or deride the person of the Court.—4 Bl. Com., *283.

These two classes of contempt are sometimes denominated *direct* and *consequential*, and sometimes *actual* and *constructive*.

The power to punish for contempt of either class is as ancient as the Courts and laws themselves, and is inherent in all Courts of justice.—4 Bl. Com., *286; Bacon's Abr. Courts, E.; 1 Bouvier's L. Dict., 352, Contempt; *United States* vs. *Hudson*, 7 Cranch, 32.

In the latter case, the Supreme Court of the United States says:

"Certain implied powers must necessarily result to our Courts of justice from the nature of their institution. * * * To fine for contempt—imprison for contumacy—enforce the observance of orders, etc., are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others; and, so far, our Courts no doubt possess powers not immediately derived from statute."

In *Yates* vs. *Lansing*, 9 Johns., 395, the Court remarked: "The right of punishing for contempt—by summary conviction—is inherent in all Courts of justice and legislative assemblies, and it is essential for their protection and existence. * * * The discretion involved in the power is, in a great measure, arbitrary and undefinable; and yet the experience of ages has demonstrated that it is perfectly compatible with civil liberty and auxiliary to the purest ends of justice. The known existence of this power prevents, in a thousand instances, the necessity of using it, and is, perhaps, the strongest reason why it is so seldom abused."

In respect to the first class of contempts, it may be remarked that an expression of regret for the contempt committed is always held to be essential to purge the contempt.

In the returns of these respondents there is no expression of regret for the acts done, but only a disavowal of any improper motive. If the contempt here were no more than a personal affront to the presiding Judge of this Court, the returns herein would not furnish sufficient ground for releasing the respondents from the penalties of their contempt.

But the contempts now to be considered are not contempts of the *first* class named, but belong to the second class, and consist of acts done in violation of an existing order of this Court, well known to each of the respondents, and done with a view confessedly of defeating the effect of that order. The undisputed facts here are: 1. That this Court made an order on the 22d day of November, 1873, whereby it enjoined the Citizens' Savings Bank, its officers and agents, from paying out the funds or otherwise disposing of the property and effects of the said bank. 2. That this order was known to these respondents. 3. That, on the 1st day of December, 1873, the bank, by advice of these respondents, and represented by them as its authorized attorneys, filed its petition in the Bankrupt Court, and obtained an order adjudicating it a bankrupt, and a further order directing the bankrupt to surrender all of its property into the hands of the Registrar of the Bankrupt Court. 4. That all the property of the bank was, on the same day, surrendered into the hands of the said Bankrupt Court. 5. That, on the 29th day of November, 1873, two days before the said proceedings in bankruptcy, the respondents demanded and received from the Citizens' Savings Bank the aggregate sum of twelve hundred and fifty dollars, as fees to the respondents as the attorneys of the bank.

The character and effect of the acts done by the respondents, in connection with the proceedings in the Bankrupt Court, will be first considered.

The order of this Court, of November 22d, 1873, restrained " the defendant, its officers and agents," from doing certain acts. This order included these respondents, and was, in law, addressed to them.

They were the agents of the defendant corporation.

In *People* vs. *Sturtevant*, 9 N. Y., 263, the Superior Court had

made an injunction order restraining the mayor, aldermen and commonalty from doing certain acts. The defendant, an alderman, and acting as such, joined with the Board of Aldermen in disregarding the order, and was thereupon attached for contempt. The Superior Court imposed a fine and imprisonment for the contempt, and this judgment was affirmed by the general term, and an appeal taken to the Court of Appeals. The Court says : " The effect of an injunction or decree restraining any acts of a corporate body, and addressed in the ordinary way to it or its agents, &c., is to bind, not only the intangible artificial being, but, also, all the individuals who act for the corporation in the transaction of its business to whose knowledge the injunction or decree comes. Unless this be so, it would be necessary, in order effectually to bind a corporation by an injunction, to make every person a party to the suit who could by any possibility be its agent in doing the prohibited act. . No such practice has ever prevailed."

Nor is formal service of such an order essential to bind a party to obedience thereto. It is knowledge only that is essential, and the suggestion in one of the returns that no service of the order was made on the Vice President of the bank is wholly without force.

In the case just cited the Court says : " In administering the law in respect to the violation of injunctions, the Court of Chancery never lost sight of the principle that it was the disobedience to the order of the Court which constituted the contempt, and, therefore, although it required of the party availing himself of its order a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of its orders to be wholly lost, when the party sought to be bound by the order had actual knowledge or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him."—*Hull* vs. *Thomas,* 3 Edw. Ch., 236 ; *People* vs. *Brower,* 4 Paige, 405 ; *McNeil* vs. *Garratt,* 1 Cr. and Phil., 98.

" If an order is served on the Solicitor, and knowledge thereof is brought home to the party whose duty it is to obey the same, he may be punished for a wilful disobedience of the order, in the same manner as if it had been personally served on himself."— *People* vs. *Brower,* 4 Paige, 405.

" The defendants in a cause are guilty of a contempt in violating

an order which the Court had pronounced, and of which they knew, although the order was not entered or the process served."— 2 Abbott's N. Y. Dig., 5.

The restraining order of this Court, made November 22d, 1873, was, therefore, by its terms and legal effect, obligatory and binding on these respondents.

The returns of the respondents, however, raise the issues : (1) That the order in question was void for want of jurisdiction in this Court to make it. Our conclusion upon this point, together with our reasons, has already been announced, but the extreme confidence or pertinacity manifested by the respondents in still claiming that this Court had no jurisdiction in the premises, has led to a careful and full re-examination of the whole question of jurisdiction as herein involved. It is not too much to say that in the present position of this case this Court would have at least cheerfully accepted the conclusion that there was a want of jurisdiction, if it had found any reasonable ground upon which to rest such a conclusion. The result has been, on the contrary, to strengthen the confidence felt, both upon grounds of reason and authority, in the correctness of the former conclusion, that this Court had complete jurisdiction, in all respects, to make its order of November 22d, 1873. The order was within the jurisdiction of this Court, was known to all the respondents, and forbade them, and each of them " from paying out or otherwise disposing of the property and effects " of the Citizens' Savings Bank ; (2) but it is said that if the order of November 22, 1873, was an order which it was within the jurisdiction of this Court to make, still it was the right of the Citizens' Savings Bank, and of these respondents, to procure an adjudication in bankruptcy, notwithstanding the order of this Court.

Of the effect of the order adjudicating a party a bankrupt, it is not necessary now to inquire. The first question is, had these respondents a right to proceed in that Court, with the view of depriving this Court of the custody of the property in question? If it were admitted that the jurisdiction of the Bankrupt Court was so far paramount and exclusive as to operate to oust the jurisdiction of this Court immediately upon the making of an order of adjudication in bankruptcy, it would not be the less, but rather the more a contempt of this Court to procure an order of that Court for such a purpose. The order of this Court restrained the respondents from paying out or " *otherwise disposing* of the property and effects " of

the bank. When, therefore, these respondents, as the agents and attorneys of the bank, proceeded to apply to the Bankrupt Court for an order, the effect of which they believed would be to remove the property of the bank from the custody of this Court, they did, in fact and intent, " *dispose* " of the property, and it is little more than solemn trifling to now say that *they* did not remove it, but the *law.* As well might they have thrown open the doors of the bank and invited the passers-by to take its property, and when called to account for their conduct, inform the Court that *they* did not disobey its order, but the *passers-by!* In either case, they did an act which resulted in removing the property from the custody of the Court ; in either case, they knew the order forbade its removal, and that the only result of their act would be to effect its removal.

That the voluntary, preconcerted action of these respondents in seeking the jurisdiction of the Bankrupt Court, avowedly in order to accomplish the removal of the property from the custody of this Court, and their obtaining an order which, in their judgment, could not but result in defeating entirely the order of this Court, by which they were then bound, is an act done in violation and contempt of the authority of this Court, does not require argument nor admit of doubt; and that, too, wholly irrespective of any question which may exist respecting the character of the jurisdiction of the Bankrupt Court in its relation to the jurisdiction of this Court in such a case.

But the offense of the respondents in the present case is aggravated by other conduct, which has been stated in the decision of this Court, filed December 19th, 1873. An application was made to this Court on the 22d of November to hear a motion to rescind the order of that date, and the Court consented to hear the motion on the 24th of November. At that time the respondents requested further time to make that motion, which was granted. The motion was never made. The only admissible proceeding on the part of the respondents was such a motion.

" When one is served with an order, apparently valid, he must obey it, or at once move to correct it, if he deems it necessary to have it changed; and, on motion to commit him for contempt in disobeying the order, the only issues to be considered are the excuses for disobeying it, and the regularity of the proceedings had under the order by the party seeking to procure the process for a contempt."—*Hilton* vs. *Patterson,* 18 Abb., 255.

" An order for an injunction or an *interim* restraining order, must be implicitly observed, and every diligence must be exercised to obey it to the letter. However erroneously or irregularly obtained, the order must be implicitly observed so long as it exists. A party affected by it cannot disregard it or treat it as a nullity, but must have it discharged on a proper application. A man who does not obey it to the letter, so long as it exists, is guilty of a contempt, unless there is something to mislead upon the plain reading of the order."—Kerr on Injunctions, *638.

" The agents of a man against whom an injunction has been awarded will be committed for contempt, if, having knowledge of the injunction, they act in contravention of the order of the Court."—Kerr on Injunctions, *644, and cases there cited. To the same effect see Hilliard on Injunction, 165, 169, 170.

In High on Injunction, 498, it is said : " The party against whom an injunction issues will not be allowed to violate it on the ground of want of equity in the bill, since he is not at liberty to speculate upon the intention or decision of the Court, or to question the authority of the Court to grant relief upon the facts stated, *except upon application to dissolve the injunction*."

" The reason for this rule," says the same learned author, " is found in the necessity of preserving the respect and obedience due to the mandates of equity, and of preventing the disastrous confusion which would inevitably· result from allowing parties against whom injunctions were issued to be themselves the judges of the propriety of the relief or the regularity of the proceedings. From the nature of the case, the tribunal granting the writ must itself be the arbiter, and its mandates are to be strictly observed until properly revoked. And if the Court granting the relief had jurisdiction of the subject-matter, the fact ˙that its prerogative was erroneously exercised does not render the injunction void, but only voidable, and, until set aside or revoked, it is entitled to implicit obedience."

Again, the same author, at page 498, says : " The violation of an injunction constitutes a contempt of the Court from which it issued, and will be punished accordingly, nor does the question of the motive or intent with which the writ was disobeyed alter or vary the responsibility for the violation ; on the contrary, it may be stated as a general rule, that when the writ has been duly served on the defendants they are liable for its violation in whatever capacity or from whatever motive they may have acted."

These respondents are, then, in this position: They have violated an injunction of this Court, issued in a case of which this Court had complete jurisdiction; they have never asked to have that order set aside or revoked; they have sought another tribunal, and, in flagrant and manifest contempt of the order of this Court, have placed the assets which they were enjoined from disposing of in any manner, in the custody of the Bankrupt Court; they have done this for the avowed purpose of defeating the order of this Court; they have proclaimed this purpose, not only in acts, but in a card over their names in the newspapers; they have further sought to defeat the jurisdiction of this Court by procuring an additional order restraining the plaintiff in the present suit and his attorneys from further invoking the authority of this Court; and, having done all this, they now come into this Court and again deny the jurisdiction of this Court over the subject-matter of the injunction, in the face of the decision of this Court upon that question, and without a word of regret for the contempt thus cast upon this Court, or an offer to repair the wrong done, ask that the present rule against them may be discharged. Such a course implies one of two things: either that this Court does not know its duty, or, knowing it, does not dare to discharge it.

Authorities without number might be added to those already referred to and quoted sustaining each of the conclusions already announced, but it will be sufficient to cite one other authority—the case of *Hines and Hobbs* vs. *Rawson*, 40 Geo., 356. In that case, certain citizens of New York had filed their bill in the State Court of Georgia for foreclosure of a mortgage. In the progress of the cause, the State Court enjoined the plaintiffs from proceeding to judgment until certain assets should be marshalled and certain questions of priority in the distribution of those assets should be settled. While this injunction remained unmodified, the attorneys of the plaintiffs in the suit filed a bill in the United States Circuit Court for the Southern District of Georgia, against the defendant. Thereupon the Chancellor in the State Court issued a rule against the attorneys to show cause why they should not be punished for violating the injunction of the State Court. The Court, after argument, ordered the attorneys to dismiss the proceedings in the United States Court, and in default of doing so, that they be considered in contempt. This decision was brought to the Supreme Court for review. The Supreme Court held the judgment of the Chancellor

erroneous in requiring the attorneys to dismiss the proceeedings in the United States Court, but expressly held that the act of the attorneys was a contempt of the State Court for which that Court might inflict punishment.

McCay, J., says: " When these parties filed their bill in Dougherty Supreme Court, and in the regular course of judicial proceeding there, they were enjoined from reducing their claims to judgment until the matters set up in the petition of Mrs. Rawson for the injunction was disposed of. It is a direct violation of the order of the Court in which, by their own motion, they are suitors, to seek another tribunal for the attaining of the very thing they are restrained from. We recognize fully the doctrine, that neither a State nor a Federal Court will restrain the other, even indirectly, by acting on the party, and admit that the rule so well understood as to foreign jurisdictions does not apply between the Federal and State Courts. But it will be found, on looking into these cases, that they are all cases in which the party sought to be enjoined was free to act when he sought the tribunal in which it was attempted to restrain him from proceeding.—2 Paige Ch., 404; 2 Story's Eq., Sec. 900. But in this case the defendant was not free to act. Of his own motion he had come into the State Court in the regular course of proceedings there. The injunction had been put upon him by a Court where he was a suitor, and when he sought the Federal tribunal, he *disobeyed* the order of the State Court. No tribunal can permit such an indignity. If its orders are improvident, it is to be presumed that it will, on motion, vacate them, or if it fail so to do, there is a writ of error to this tribunal, or if the party takes the proper steps, the law authorizes a removal of the controversy to the Federal Court. But a contemptuous disregard of the order of the Court, by one who is a suitor in it, authorizes the Court to punish the offender, and we think, under the circumstances of this case, the Court was authorized to do so. * * * The State Court, as we have said, has the right to punish for disobedience of its order. If the defendant sees fit to take the consequences, let him do so. Each Court has its sphere, and should keep within it, and we doubt not the Chancellor below can find a mode of attaining his end, to wit: obedience to his injunction, other than an order directing the defendant to dismiss his proceedings in the Federal Court. We reverse the judgment on the ground that the Chancellor had no right to order the proceedings in

the Circuit Court to be dismissed. But we have no doubt of his power to punish the defendant for violating his injunction, and to continue that punishment until he shows, by his conduct, that he is in fact obeying the process of the Court."

This decision is in principle wholly applicable to the case before us. Almost the only feature of distinction between the two cases is the fact that in the Georgia case the parties who defied the State Court were plaintiffs in the Court, whereas, in this case, they are defendants. But in either case they were before the Court, and they had been enjoined by the Court, and their subsequent voluntary proceeding in the Federal Court was pronounced "an indignity which no tribunal can permit."

It is said, however, by these respondents, that the Court of last resort, meaning thereby the Circuit Court of the United States, "has adjudged, after full argument and consideration had, that the order in bankruptcy was properly granted, notwithstanding the Act of Congress of February 13th, 1873, entitled ' An Act to amend the bankrupt law.' "

It is necessary here to remark that this Court has no legal or official relations whatsoever with the Circuit Court of the United States. That Court is neither superior nor inferior to this Court. It has no supervisory, appellate, or other jurisdiction over this Court. When presided over by a learned or upright Judge, its judgments are deserving of just so much regard from this Court as the reasons assigned for them will justify. In the present instance the judgment of that Court was rendered under circumstances which induced that Court to say that they " were allowed no time to file an opinion in writing, and only to state briefly the conclu-sions." No authorities are cited to sustain the conclusions, and the steps or methods by which the conclusions are reached, are known only to the presiding Judge himself. In view of such a judgment, it will hardly be expected that this Court will yield its deliberate opinions, and retire from positions which it has as-sumed as the result of careful study and reflection, and for which it has fully stated the reasons and the authorities. This Court will content itself with re-affirming all the conclusions stated in its decision of December 9th, 1873, respecting the relations of this Court to the Bankrupt Court, under the Act of Congress of February 13th, 1873.

But this Court does not now question the right of the Bankrupt

Court to make the orders in the bankruptcy proceedings upon the state of facts presented to that Court at the time the orders were made: it only questions the right of these respondents to seek the jurisdiction of that Court for the purpose of defeating an order of this Court addressed to them and binding upon them. The Bankrupt Court has its responsibilities, and this Court has its responsibilities. This Court is not now called upon to affirm or deny the propriety of any orders made by that Court. Its only concern is with its own authority and dignity, and its duty to enforce its own orders and to punish those who set them at defiance, in whatever place or for whatsoever purpose.

But if the orders made by the Bankrupt Court were admitted to be wholly proper and well advised, that fact would not tend to relieve these respondents from the consequences of their violation of the order of this Court. However clear the jurisdiction of that Court to make those orders, these respondents, under the order of this Court of November 22d, 1873, had no right to seek the jurisdiction of that Court, or to do any act whatever, the effect of which would naturally be to remove the property in question from the custody of this Court. Their entering that Court for that purpose was a violation of the order of this Court, and it is immaterial whether the jurisdiction of that Court is concurrent with this Court or exclusive of it. The disobedience of the order of this Court, by these respondents, is equally clear and flagrant in either case.

The second alleged contempt of these respondents consists in their demanding and accepting from the Citizens' Savings Bank "large fees out of the funds of the bank on the 29th day of November, 1873." The fact here alleged is expressly admitted by all these respondents.

Of the legal character and effect of the act, this Court has no doubt. The respondents and the bank, and all its agents, were forbidden, by this Court, on the 22d day of November, 1873, to part with any of its funds. This order was known to all the respondents. But on the 29th day of November, 1873, two days before the commencement of proceedings in bankruptcy, they demanded and received fees, as attorneys, out of the funds of the bank. There is but one possible ground of excuse for such an act, and that consists in denying the jurisdiction of this Court to make the order. Upon that question this Court has reached its

firm conclusion, and, in accordance with that conclusion, it holds the act of these respondents in demanding and accepting fees from the funds of the Citizens' Savings Bank, on the 29th of November, 1873, to be a clear and palpable violation and contempt of its authority as a Court. If the payment of fees was required in order to protect the interests of the bank, another course was open to the bank and its attorneys, which would have involved no violation of the order of the Court. The property of the bank was a "fund in equity" from the moment this Court made the restraining order of November 22d, 1873, and these respondents had no right whatever to receive fees from that fund, except upon the order of this Court.

The only remaining question is the power and duty of this Court to inflict punishment for the several acts of contempt which these respondents have committed. Aside from the general power inherent in all Courts of justice to punish for contempts of its person or authority, power to punish for such offenses is conferred by Sections 6 and 7 of Chapter CVII of the General Statutes. By the first of these Sections, the power is conferred to punish for direct contempt in the presence of the Court. By the latter Section, the power is conferred to remove or suspend any attorney, solicitor or counsellor, who shall be guilty of any deceit, malpractice or misdemeanor, after the accused shall have been furnished with a copy of the charges against him, and an opportunity given him to be heard in defense. The present case falls within the terms and intent of the latter Section, and these respondents have each enjoyed the full protection afforded by that Section. It is now for the Court to determine the punishment which shall be most nearly commensurate with the offense committed.

In reaching the conclusions now stated, this Court has sought to divest itself of every trace of personal feeling, and to look with judicial calmness at the several questions involved. It has taken ample time, and has availed itself of every aid within its power to a right conclusion. It would gladly have listened to any arguments from the learned and eminent counsel who represented the respondents, but no arguments were submitted. The conclusion is irresistible, that if the orders of this Court are to be deliberately and systematically violated by its attorneys, and this Court is to sit idly by and overlook such contempts, then the jurisdiction and

powers of this Court are held at the will and sufferance of its attorneys. In such an issue this Court would be false to its highest and most essential functions, and false to the community for whose protection Courts are instituted, if it did not lay aside all considerations save those of solemn judicial duty, and assert the supremacy of its authority under the Constitution and laws of the State.

It is, therefore, *adjudged* that each of the respondents, to wit: J. D. Pope, A. C. Haskell, F. W. McMaster, L. E. LeConte, W. K. Bachman and L. F. Youmans, Esquires, is in contempt of this Court, by reason of the several acts charged against him in the rules issued in this case.

And it is further *ordered, adjudged* and *decreed* that each of the said respondents, J. D. Pope, A. C. Haskell, F. W. McMaster, L. E. LeConte, W. K. Bachman and L. F. Youmans, Esquires, be, and he is hereby, suspended from his office of attorney, solicitor and counsellor in the Circuit and Probate Courts of this State, and forbidden to practice therein, until the property and effects of the Citizens' Savings Bank shall be restored to the custody of this Court, and until all fees received by him from the said bank since November 22d, 1873, shall be returned to the said bank, and to the custody of this Court; and the Clerk of this Court is hereby charged with the service on each of the said respondents of a duly attested copy of the decree of this Court, which will be filed herewith.

The respondents below appealed to this Court.

*Campbell, Rion, Connor, Barker,* for appellants.

*S. W. Melton,* Solicitor *pro tem.,* contra.

April 4, 1874. The opinion of the Court was delivered by

Moses, C. J. The importance of the issue presented in the case has been recognized by our consent, not only to allow it to be docketed, but to be heard in anticipation of the Term to which it properly belongs. While it affects on the one side the professional position and interests of the bar, it is not to be forgotten that on the other it involves the authority and dignity of the bench. Justice could not be enforced in the impartial and fearless spirit which should govern and direct its administration without full power on

the part of the Court to enforce obedience to its orders, subject alone to reversal or correction, in the mode provided by law.

The bar, in no small degree, contribute to the reputation of the Court. Where it is impressed with the high characteristics which give to the profession the lofty and eminent position which it maintains in the community as the champions and vindicators of public as well as of private rights, its salutary influence acts upon the Court by inspiring it with the same ennobling principles, so essential and important to the proper dispensation of law and justice. The rights of the attorney, within his proper and prescribed sphere, are as sacred as those of the Court. Both must be respected and maintained within their just limits, untrammeled by all control, except that which the law enjoins.

Influenced by the proper considerations which the character of the case demands, while we have given to it all the deliberation necessary in our judgment to a correct conclusion, in our view we see nothing which requires an inquiry into many of the points submitted in behalf of the appellants. While they may involve abstract propositions of a very interesting nature, we do not perceive their bearing or effect upon the principles by which the case must be determined.

We do not propose to consider whether the restraining order of the 22d November, 1873, is of the class of remedies provided by the second Section of the Code, or whether, according to Title VII, it is a provisional remedy, auxiliary and subservient to the particular relief sought by the complaint, and operating for the immediate protection of the fund, the disposition of which is to depend on the final adjudication of the case. Nor do we regard it necessary to consider at length whether, in view of the bankrupt Act, before the action of the Court, which alone has the right to administer it, the State Courts have lost all jurisdiction in regard to insolvent corporations, and that, notwithstanding no interference by the United States Court, either on the motion of the corporation itself or of a creditor, a State Court which has a general equitable jurisdiction to settle the affairs of an insolvent corporation has lost it because proceedings may be instituted in the Court of Bankruptcy to withdraw from its jurisdiction the control of its assets, by subjecting the corporation to proceedings in bankruptcy in the only Court which is authorized to entertain them. In our judgment, until such adjudication, the Circuit Court of the State, under its general

equitable powers in relation to insolvent corporations, preserves its jurisdiction. Nor does the examination of the cases cited for a different conclusion at all affect our judgment in this particular. Such, too, seems to be the opinion of His Honor Judge Bond, as expressed in his order of 19th December, 1873.

The jurisdiction by virtue of which his Honor the Circuit Judge made the order of 22d November, 1873, appears to us to have been within the general powers conferred by the Constitution and existing statutes. The Sections of the Code in regard to injunctions, considered as a whole by the comparison of each of its parts, do not materially change the-mode of practice which existed before the abolition of all distinction between legal and equitable remedies. It is clear that, by the 247th Section of the Code, the temporary order for an injunction may be heard without notice to the defendant. In fact, notice of the application might defeat the very object which the order was intended to secure. Nor did the failure of the Judge to require a written undertaking of the plaintiff to pay all damages which the corporation might sustain deprive him of jurisdiction in the motion then before him. It was not dependent on his compliance with every formal condition by which the Statutes proposed it should be conducted and regulated. There may be cases where the requirement of a bond becomes "a jurisdictional question," as in the administration of the attachment laws, where the whole power of the Court is conferred by statute, and, in enforcing it, it can have no aid or support from its common law or equitable powers.

The pressure of business on our time will not permit us to enlarge upon all the points made by the return, which assume error in the judgment of the Court, particularly when it is remembered that, from its peculiar character, this case is taken up for its decision out of its regular order. Without inquiring whether the power which is inherent in the Court of General Sessions and Common Pleas, as a Court of general jurisdiction to punish attorneys for contempt, is restricted to that declared in the 6th, 7th and 8th Sections of Chapter CVII of the General Statutes, we concur with the Judge below in holding that the course of the attorneys, in respect to his order of 22d November, 1873, was a violation of that duty which they owed to his judicial authority. Those Sections, while not precluding his general authority, would seem to involve only his power to remove or suspend, and if considered a restraint on all other punishment of attorneys who may commit contempts, not deserving

suspension or removal, would deprive the Court of the right to impose an infliction of a less severe or excessive character. It could not have been intended that a slight contempt should meet with the excessive penalty of suspension or removal from the bar. Nor are we affected by the argument on behalf of the attorneys that before the Court can exercise authority under the 7th Section of the Chapter just referred to, "the attorney must be first indicted and convicted." That such could not have been the acceptation in which the Legislature intended the Section to be received is manifest from that portion of it which requres a copy of the charges, where the alleged offense is "deceit, malpractice or misdemeanor, to be delivered by the Clerk of the Court." The construction contended for would take from the Judge all right of determining the existence of the charge, and actually refer it as a question of fact to the jury. Suppose the contempt should be in a Court which decides without the intervention of a jury, and yet may suspend or remove an attorney, the power would be entirely defeated. In *Stevens* vs. *Hill*, 10 Excheq., 30, Lord Abinger said: "'I never understood that an attorney might not be struck off from the roll for misconduct in a cause in which he was the attorney merely because the offense imputed to him was of such a nature that he might have been indicted for it. So long as I have known Westminster Hall, I never heard of such a rule as that."

The violation of an order of the Court involves a greater contempt of its authority than a mere personal affront to a Judge, even when presiding. The one, while it affects the dignity of the Court, may be repaired and atoned for by an acknowledgment by the attorney, or the punishment of the Court, but the other is calculated to impede the administration of the law by a disobedience and disregard of its orders, which, until reversed, must stand as the judgment of the Court, and from none should demand a more prompt submission than those who, by their relation to the Court, are its aids and advisers. If, until reversed, they do not at least command obedience from them, what may be expected from disappointed or dissatisfied suitors?

We do not know that, in the case before us, the question of the regularity, or even nullity, of the order of the 22d November can change the relations of the attorneys in their duty to the Court. On the very day that it was made they asked to be heard on a motion to rescind it. This was granted, and the twenty-fourth of

the same month fixed for a hearing. On that day, at their request, the time was extended, and yet the motion was never submitted. The application by the bank to be declared bankrupt was admitted to have been on the advice of the attorneys, and this must have been given on or before the 27th November, for, on that day, the stockholders of the corporation determined to subject it to the bankrupt law, which was accordingly done on the 1st of December following. In this we consider the wrong to the Court chiefly consisted. The character of the gentlemen engaged must prevent us from supposing that they had a deliberate intention to mislead the Judge, and thus quiet him in the assumption that his order would be respected, at least until the hearing of the motion on their part to rescind it. Their act, however, independent of their motive, was the matter for the consideration of the judgment of the Court, except so far as the absence of the improper motive could palliate or mitigate the sentence which he might impose for its commission. While he was induced to suppose that, so far as they were concerned, his order would be respected by their clients, it was upon their consent that steps were taken, not only to impair its validity, but to render it entirely void. The course which they proposed, in seeking its rescision by the motion before him, was the proper one to have been pursued, and it is to be regretted that it was not followed. Lord Eldon, in *Partington et al.* vs. *Booth et al.*, 3 Meriv., 149, said : " The injunction, however erroneously granted, was an order of the Court, and must be obeyed." Mr. Drewry, in his work on " Injunctions," p. 407, says : " The proper course is not to treat it as a nullity, but apply to the Court to discharge it for irregularity."

The application to the Court of Bankruptcy was to act directly on the order of the Judge, and it is no excuse to say that they applied to a Court which, by the jurisdiction it could assume over the fund and the party, would leave his order but barren words. That they employed the surest means to render it ineffective in no way extenuates the wrong.

While the extent of the punishment may not ordinarily be a matter of consideration for this Court, yet, looking to the intimate and delicate relations which must exist between the bench and bar, we may be permitted to say, that in our judgment an attorney should only be deprived of his license to practice when he has committed a contempt of a gross and heinous character, involving

either contumely or disrespect to the Judge, or a malpractice of so gross a kind as would render him an improper person to represent the rights of others. The voice of such an one should not contaminate the halls of justice. If it is to be held a proper punishment for an act involving no moral dereliction, what punishment could a Court impose upon an attorney who has disgraced the honor of his profession in the course of his practice by falsehood or perfidy? The vocation of the lawyer is his source of living, and should he, and all dependent upon him for support, be deprived of the means of affording it when, although his act is in contravention of the rights of the Court, it has not been induced by any vicious or immoral incentive?

The condition imposed by the Court, on the performance of which the suspension "from his office of attorney, solicitor and counselor in the Circuit and Probate Courts of this State," was to terminate, cannot affect the judgment pronounced, which, in our view, must operate as an immediate deprivation of the office itself. And yet it was not intended by the learned Judge to be unmeaning and impotent. It could never be effective to terminate the suspension, and still it is clear that some benefit was proposed through its interposition. Its intent to effect a purpose favorable to them proceeded upon the assumption that in some mode they could obtain a restoration of the funds to the custody of his Court, so that his order in regard to them could attach. We cannot see how such a result could be accomplished.. The corporation has been declared a bankrupt, its assets are in the charge of the Court of Bankruptcy, and no proceeding on the part of the bank, or a creditor, can transfer them to the control of the State Court. The order, as we have said, intended that a compliance with the condition should operate as an entire avoidance of it. Are we at liberty, with this fact patent in the order, to give to the qualification the effect which must attach to an impossible condition, and declare that it was intended to have no other force? This could only be done through a construction of the orders which we must assume was never intended. If a condition is impossible, and so we regard this, the act to which it is annexed takes effect, and so far, in this particular case, from avoiding the judgment, makes its terms binding and conclusive. This could not have been the purpose of the learned Judge. We do not agree with His Honor in respect to so much of the order as requires the fees received by the counsel to be " restored to the bank

and the custody of the Court." A fair construction of the order of 22d November only applied the restriction to " paying out the funds, or otherwise disposing of the property and effects of the said corporation, by its officers and agents." We do not regard the term " agent " in the significance which it is to receive in its application to the subject-matter as comprehending the attorneys of the corporation. The prohibition was against paying out, not against receiving.

Can the order be so understood as to prevent a creditor of the institution from accepting payment of his demand without rendering him liable to be charged with a contempt for so doing? It was not to be supposed that the services which the attorneys gave by any advice to the bank in relation to the order of 22d November, were to be without compensation. It is also in our judgment a clear violation of the injunction for the parties to pay out of the fund attorney's or counsel fees. The object of the injunction was to preserve the fund, in order that it might be placed in the hands of a Receiver, should it appear that one was necessary. A Receiver would not be justified in making payments of that character without the order of the Court, and the parties in interest, bound by the injunction, could not do what it is improper for a Receiver to do. As the attorneys in the cause were not named in the order, they are not directly liable for a breach of it, but, under their general duty, they are chargeable as for a contempt if they co-operate with parties to violate an injunction.

In any point of view, we cannot regard the mere acceptance of the money as a remuneration for their professional services, unless through some fraud practiced on the Court, as a contempt deserving so great a punishment as that which has been inflicted.

Cases of this character, fortunately rare in this State, from the high and honorable reputation of its bar, are of the most unpleasant nature. When contempts of Court, by its own counsel, are prompted by a purpose to attack its dignity, and depress the moral and official influence of those who preside over them, the punishment, no matter how severe, should, within judicial discretion, be adequate and sufficient to repress the evils which are their usual consequences. Where, however, they are charged against counsel of character, who, by their sworn returns, disavow all purpose of committing them, the dignity of the Court is as well vindicated by a light as by a severe infliction.

We do not feel the force of the argument on the part of the counsel that a mere disclaimer of all intention of contempt, where it is of a constructive kind, so completely purges it as concludes all further proceeding. The authorities do not sustain the proposition to the extent stated. Such a rule would make the Court powerless to punish even a gross contempt on the mere disclaimer of all intention. While the intention is often the criterion by which criminal acts are judged, the absence of it in the perpetration of wrong does not always discharge one from the consequences which may follow. In High on Injunctions, Section 849, it is said: "Nor does the question of the motive, or intent with which the writ was disobeyed, alter or vary the responsibility for the violation."

It is true that a disavowal of purposes, with an expression of regret that such a construction has been put on the act of a party as to hold him answerable for a contempt, will operate to his benefit in the measure of the penalty. We would have been better satisfied if we had perceived in the returns of these gentlemen, which disclaim all intention of committing a contempt, a declaration of their regret that His Honor the Judge had misconceived their purpose and intention.

It is adjudged that the order of 12th January, 1873, be set aside, and the rule and returns remanded to the Judge for such further proceedings as he may regard proper thereon.

*Wright*, A. J., and *Willard*, A. J., concurred.